UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ELMER E. CROSS,
        Plaintiff,

        v.                                  CIVIL ACTION NO.
                                            12-10424-JCB
EXECUTIVE OFFICE OF LABOR AND
WORKFORCE DEVELOPMENT, ET AL.,
        Defendants.

<u>MEMORANDUM AND ORDER</u>

BOAL, U.S.M.J.

I.   INTRODUCTION

     On March 5, 2012, plaintiff Elmer E. Cross ("Cross"), a
resident of Boston, Massachusetts, filed a civil complaint in
which he alleges, *inter alia*, discrimination and retaliation in
employment, in violation of Title I of the Americans with
Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*  Cross also
filed a number of other documents in support.  <u>See</u> Laws Enforced
by EEOC (Docket No. 4), Documents Pertaining to Requests for
Reasonable Accommodation (Docket No. 5), Adverse Actions After
Request for Reasonable Accommodation (Docket No. 6), and
Mediation Documents (Docket No. 7).[1]

     Cross's complaint names a number of defendants, including:
(1) the Equal Employment Opportunities Commission ("EEOC") Boston
Area Office;(2) the EEOC investigator, Mr. Anthony M. Pino, Jr.
("Pino");(3) the EEOC Boston Area Office Director, Mr. Robert L.
Sanders ("Sanders");(4) the Commonwealth of Massachusetts

---

[1]Additionally, Cross filed other exhibits including copies
of boilerplate of various laws, e-mails, letters, EEOC documents,
and other materials.

Executive Office of Labor and Workforce Development/Department of
Workforce Development/Division of Unemployment Assistance
("EOL/DWD/DUA")(a Massachusetts Division of Unemployment
Insurance Telephone Call Center);(5) EOL/DWD/DUA employee Mrs.
Petri Turner ("Turner");(6) EOL/DWD/DUA employee Mrs. Rosie
Cornelison;(7) EOL/DWD/DUA employee Mr. Clarence Weekes; (8)
EOL/DWD/DUA employee Mr. Kenneth Owens ("Owens");(9) EOL/DWD/DUA
employee Mr. John Cullinane ("Cullinane");(10) EOL/DWD/DUA
employee Mr. Michael Williams ("Williams"); and
(11) EOL/DWD/DUA employee Mr. David Olsen ("Olsen").

The complaint is convoluted and not entirely coherent or
organized. Although Cross uses paragraphs in the complaint, his
allegations are essentially set forth in narrative, stream-of-
consciousness-form, making it difficult to follow. From what can
be gleaned from the complaint and the various exhibits in
support, Cross alleges that he was constructively discharged from
his employment with the EOL/DWD/DUA as a Job Specialist III,[2] and
suffered a number of adverse actions and conditions in his
employment in retaliation for seeking reasonable accommodations
under the ADA. He claims to be a qualified person with a
disability, suffering from Post Traumatic Stress Disorder,
anxiety, type II diabetes, bone spurs, osteoarthritis, and a
pinched nerve in his lower back.

---

[2]Cross claims that he was on leave under the Family Medical
leave Act from March 31, 2011 to April 1, 2012.

Since he started his employment in 2009, Cross complained to
Turner about discrimination and a hostile work environment
because of harassment and intimidation by co-workers. Complaint,
¶ 17. On September 4, 2009, he made a verbal request to his
manager (Turner) for reasonable accommodations. Id. Turner
rejected his request and directed him to the ADA/504
(Rehabilitation Act) Coordinator (Owens). Id. Cross met with
Owens, who determined that Cross's issues did not merit
reasonable accommodations. Id. Cross was then referred to the
Director of Labor Relations (Williams), who advised him to
refrain from being alone on an elevator with a former co-worker
(Lynne Cheeks), with whom he had adverse work relations.
Complaint, ¶¶ 17-18. He was also advised to notify his boss
(Cullinane). Complaint, ¶ 17.

On October 5, 2009, Cross submitted a written request for
accommodations to Turner. Id. Cross's requests included: (1)
that he be provided a job coach to address the need for anxiety
accommodation, or to get extra help as needed to improve the
quality of his work; (2) that EOL/DWD/DUA institute a modified
method of supervision of him; (3) that he be allowed to work at a
lower standard of productivity when his blood glucose is low, and
that he be allowed extra rest and bathroom breaks; (4) that he be
allowed to stand and stretch frequently to relieve stress on his
lower back and both knees; (5) that he be given a floor mat that
allowed him to move around better on the carpeting; (6) that he

be given a handicap parking space; and (7) that he be given a flexible work schedule to accommodate medical appointments for his diabetes.  Docket No. 5-4, p. 2-3.

On August 25, 2010, Owens issued a Memorandum advising Cross that his request for reasonable accommodations was approved in part and denied in part.  Complaint, ¶ 22; Docket No. 5-5, p. 1-3.  Specifically, his request for a floor mat was approved, his request for breaks when symptoms of his medical condition became acute was approved (if reasonably necessary), and his request for breaks to stand and stretch was approved as necessary but for no more than 15-30 seconds unless otherwise directed by his health care provider.  Docket No. 5-5, p. 1.

On the other hand, Cross's request for a job coach, a lower standard of productivity, and a permanently assigned handicap parking space were denied on the grounds that: (1) Cross had already been provided with coaching on his essential job duties and thus continued coaching was not necessary to perform the essential functions of his job; and (2) because lowering the standard of productivity and providing a parking space would create an undue hardship on the EOL/DWD/DUA, and the EOL/DWD/DUA determined that the requested accommodations were not required to perform the essential functions of the job.  See Exhibit (Docket No. 5-5).

Next, Cross claims that from September 4, 2009 through

October 5, 2009, he suffered adverse work conditions.  Complaint,
¶¶ 17-18.  Specifically, he claims his excellent job performance
was overlooked, while his co-workers were given awards; that he
was placed on a Remedial Development Plan; that he was micro-
managed; and that his co-workers mocked, intimidated, stalked,
belittled, harassed, and ostracized him.  Complaint, ¶ 18.

On May 19, 2010, Cross filed a complaint with the EEOC
because he had not heard back from Owens about his requests.
Complaint, ¶ 19.  He claims Owens lied when he stated that he had
assigned Mr. Wright to address his requests.  Id.  He seeks to
hold Owens liable for denying his reasonable accommodation
requests in violation of the ADA.  Id.  He also claims Owens
slandered and libeled him by filing a false affidavit.  Id.

Additionally, Cross claims that on June 4, 2010, the
defendants Cullinane and Williams began a "character assignation
campaign" against him, and retaliated against him for complaining
about discrimination and for asking for reasonable
accommodations.  Complaint, ¶ 20.  While it is not entirely
clear, it appears that Cross alleges that Cullinane fabricated a
story that Cross was sexually harassing a telephone claimant
caller.  Id.  Cross also contends that Williams attempted to
bribe him -- through the Union Vice President (Robert Day) -- by
stating that if Cross dropped his EEOC/MCAD case against his
employer, he would "swap" the formal written warning Cross

received into a verbal written warning.  <u>Id.</u>  Cross filed a
retaliation charge with the EEOC on June 7, 2010, and then filed
a second retaliation charge with the EEOC alleging attempted
bribery.  <u>Id.</u>

Further, Cross alleges that he retained a lawyer(s) to
represent him in this matter, but claims that he was misled into
thinking the lawyer(s) were experienced.  <u>Id.</u>  He contends this
constituted legal malpractice.[3]  <u>Id.</u>

Additionally, Cross claims that defendant Olsen, acting <u>both</u>
as a NAGE (National Association of Government Employees) Union
Hearing Officer and a Human Resources Director, held two illegal
hearings against him.  <u>Id.</u>  Cross asserts this was conflict of
interest because the code of conduct prohibited Olsen from acting
in these dual roles.  <u>Id.</u>  He further claims Olsen "convicted"
him without any finding of fact or law, and without any
confession from him.  <u>Id.</u>  Based on these allegations, Cross
filed a third retaliation charge with the EEOC on May 25, 2011.
Complaint, ¶ 21.  He claims that after he filed the EEOC
complaint, Olsen and others lied in affidavits in which they

---

[3]Cross references his representation by Attorney Douglas
Lovenberg, and Attorney Irena W. Inman.  In an attached exhibit,
Cross claimed that the Civil Service Commissioner dismissed his
case for improper venue and jurisdiction.  Cross also complains
about the fee arrangements.  Although he has claimed legal
malpractice, he has not identified these two attorneys as
defendants in this action, and this Court will not consider this
action as asserting malpractice claims against them.

denied any wrongdoing. Complaint, ¶ 20. On December 6, 2011, Cross filed a fourth amended charge against Cullinane and Williams, as well as Eugene Sullivan (not a named defendant in this action), alleging he was subject to a negative employment action and was intentionally retaliated against in order to constructively terminate his employment, by making Cross quit or get fired. Complaint, ¶ 21.

On May 10, 2011, Cross filed a fifth and final amended retaliation charge with the EEOC. <u>Id.</u> In that claim, Cross alleged that Cullinane interfered with his claim for unemployment benefits by placing a note (in his file) instructing that no other employee was to handle Cross's claim and that any claims were to be directed to his attention. <u>Id.</u>

With respect to defendant EEOC Investigator Pino, Cross claims that Pino was negligent in his investigation and failed to follow the EEOC Compliance Manuel, and other law. Complaint, ¶ 15. He also asserts that Pino denied him due process because he rejected Cross's evidence of discrimination and retaliation (rebuttals and summary responses to four alleged perjured affidavits and position statements of his former employer). <u>Id.</u>

Cross next alleges that defendant Sanders submitted a position statement that supported Pino's conclusions. Complaint, ¶ 16. Cross contends that Sanders's findings (*i.e.*, that Cross's former employer articulated legitimate, non-discriminatory

reasons for denying his requested accommodations in part),
constituted a cover-up, obstruction of justice, and fraud.  Id.
He also asserts that his request for "anxiety accommodation" was
never addressed.  Id.

On December 8, 2011, the EEOC dismissed Cross's claims based
on disability discrimination and hostile work environment, and
his claims for reasonable accommodation for physical and mental
disabilities.  Complaint, ¶ 14.  He was given a "right to sue"
letter.  Docket No. 1-1, p. 1.

In this action, Cross seeks, *inter alia*, compensatory and
punitive damages, as well as injunctive relief vacating all his
reprimands and negative references in his employment personnel
record.  Complaint, p. 9.

Along with the complaint and exhibits, Cross filed a Motion
to Appoint Counsel (Docket No. 2) and a Motion for Leave to
Proceed *in forma pauperis* (Docket No. 3).

Thereafter, on March 27, 2012, Cross filed a Motion to
Access and Use CM/ECF to Electronically File Court Papers on the
PACER System (Docket No. 9), and a Motion to Waive PACER and
CM/ECF Filing Fees (Docket No. 10).  The Court granted these
motions on April 3, 2012.

II.  DISCUSSION

    A.   The Motion for Leave to Proceed *In Forma Pauperis*

    A review of Cross's financial disclosures indicates that he

is on medical leave, and receives social security disability benefits. He expects that he will be unable to return to work. He reports that he has no substantial assets or income, and that his debts exceed his income. In light of these disclosures, this Court finds that he has demonstrated sufficiently that he lacks funds to pay the $350.00 filing fee for this action. Accordingly, his Motion for Leave to Proceed *in forma pauperis* (Docket No. 3) is <u>ALLOWED</u>.

B. <u>The Complaint is Subject to Screening</u>

Because Cross is proceeding *in forma pauperis*, his complaint is subject to screening under 28 U.S.C. § 1915(e)(2). This statute authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action is malicious, frivolous, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. <u>See</u> 28 U.S.C. § 1915(e)(2); <u>Denton v. Hernandez</u>, 504 U.S. 25, 32-33 (1992); <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989).

For purposes of preliminary screening, the Court liberally construes Cross's complaint because he is proceeding *pro se*. <u>See</u> <u>Hughes v. Rowe</u>, 449 U.S. 5, 9 (1980); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972); <u>Instituto de Educacion Universal Corp. v. U.S. Dept. of Education</u>, 209 F.3d 18, 23 (1st Cir. 2000). Nevertheless, even under a liberal construction, Cross's claims

are subject to dismissal for the reasons discussed below.

C.    Failure to Comply With Fed. R. Civ. P. 8

Rule 8 of the Federal Rules of Civil Procedure provides, in
relevant part, that "[a] pleading that states a claim for
relief must contain ... a short and plain statement of the claim
showing that the pleader is entitled to relief ...."  Fed. R.
Civ. P. 8(a)(2).  The statement must "give the defendant fair
notice of what the plaintiff's claim is and the grounds upon
which it rests."  Phelps v. Local 0222, No. 09-11218, 2010 WL
3342031, at *5 (D. Mass. August 20, 2010)(quoting Swierkiewicz v.
Sorema N.A., 534 U.S. 506, 512 (quotations and citations
omitted)).  In addition, the pleadings "must afford the
defendants a meaningful opportunity to mount a defense."
Benyamin v. Commonwealth Med. UMass Med. Ctr., Inc., 2011 WL
2681195, at *2, (D. Mass. 2011) (quoting Diaz-Rivera v.
Rivera-Rodriguez, 377 F.3d 119, 123(1st Cir. 2004)(internal
punctuation and additional citations omitted)).  At a minimum,
"the complaint should at least set forth minimal facts as to who
did what to whom, when, where, and why."  Id. (quotation
omitted).  While the "First Circuit holds a *pro se* litigant to a
standard of pleading less stringent than that for lawyers," "this
cannot be taken to mean that *pro se* complaints are held to no
standard at all."  Green v. Massachusetts, 108 F.R.D. 217, 218
(D. Mass. 1985).  Thus, "the requirements of Rule 8(a)(2) are

minimal – but minimal requirements are not tantamount to nonexistent requirements." Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004) (internal quotation omitted). Under Rule 8, a plaintiff must plead more than a mere allegation that the defendant has harmed him [or her]. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)(detailed factual allegations are not required under Rule 8, but a complaint "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation" (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). See Chiang v. Skeirik, 582 F.3d 238, 244 (1st Cir. 2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (internal citation and quotation marks omitted).

Here, as noted above, Cross's complaint is convoluted. It does not give notice to each of the defendants of the cause of action(s) asserted against them separately, nor does it give the minimal "who, what, when, where, and why" information as to each defendant.[4] Indeed, this Court is unable to discern any claims

_____

[4]Cross references causes of actions under 42 U.S.C. § 1983 and the Rehabilitation Act as well as state tort claims, but he fails to delineate these claims coherently in accordance with Rule 8. This Court cannot infer on this record that a constitutional claim has been pled, or that there is no other statutory remedial scheme adequate to address Cross's alleged damages. See Adams v. Johnson, 355 F.3d 1179, 11-83-84 (9th Cir. 2004) citing Schweiker v. Chilicky, 487 U.S. 412, 423(1988)("When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its

against Rosie Cornelison or Clarence Weekes, notwithstanding that they are referenced in the complaint.  Further, Cross has asserted wrongdoing by a number of individuals who are not named as defendants in this action.  His submission of a host of exhibits including employment records, EEOC proceedings, medical records, e-mails, letters, and other documents cannot serve as a substitution for a complaint that meets Rule 8 standards.[5]  In short, it would be immensely unfair to require each of the named defendants to peruse the complaint as pled and cull out Cross's

---

administration, we have not created additional <u>Bivens</u> remedies.").

[5]Moreover, "[d]istrict courts are not required to conjure up questions never squarely presented to them or to construct full blown claims from sentence fragments." <u>Terrance v. Cuyahoga County</u>, 2005 WL 2491531 at *1 (N.D. Ohio 2005) <u>citing</u> <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274, 1278 (4th Cir. 1985).  <u>See</u> <u>McDonald v. Hall</u>, 610 F.2d 16, 19 (1st Cir. 1979)(court is not required to "conjure up unpled allegations," notwithstanding duty to be less stringent with *pro se* complaints).  Such an exercise by the Court would "'require ... [the courts] to explore exhaustively all potential claims of a *pro se* plaintiff, ... [and] would ... transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." <u>Terrance</u>, 2005 WL 2491531, at *1, <u>quoting</u> <u>Beaudett</u>, 775 F.2d at 1278.  <u>See</u> <u>also</u> <u>Wells v. Brown</u>, 891 F.2d 591, 594 (6th Cir. 1989) ("It is certainly reasonable to ask that all plaintiffs, even *pro se* plaintiffs,.... alert party defendants that they may be individually responsible in damages.  The trial and appellate courts should not have to guess at the nature of the claim asserted.").  "[T]he failure to identify a particular legal theory ... places an unfair burden on the defendant to speculate on the potential claims that plaintiff may be raising against it and the defenses it might assert in response to each of these possible causes of action." <u>Terrance</u>, 2005 WL 2491531, at *1.

claims for which liability would attach.[6]

Although Cross appears to have exhausted his administrative remedies with the EEOC and obtained a "right to sue" letter, this Court cannot permit this action to proceed as pled. If and/or when Cross files an amended complaint that complies with the pleading requirements of Rule 8, this Court would consider permitting this action to proceed in whole or part against defendants who have participated in the EEOC proceedings, and other defendants as to whom plausible claims are asserted.

D. Failure to State a Plausible Claim Against the EEOC

Next, with respect to the defendant EEOC, Cross fails to

---

[6]As an additional matter, this Court notes that, to the extent Cross seeks to hold individual defendants liable for employment discrimination, he fails to state claims upon which relief may be granted, because there is no individual liability under the ADA. See Roman-Oliveras v. Puerto Rico Elec. Power Authority, 655 F.3d 43, 52 (1st Cir. 2011)(noting agreement "'with the virtually universal view that Title I of the ADA, like Title VII of the Civil Rights Act,' 'addresses the conduct of employers only and does not impose liability on co-workers.'") (quoting Fantini v. Salem State College, 557 F.3d 22, 31 (1st Cir. 2009)(holding that this circuit has held that there is no individual liability for employees under Title VII)(other citations omitted). Further, without deciding, this Court notes that Cross's ADA claim for a reasonable accommodation in the form of a parking space may be subject to dismissal. In Colon-Fontanez v. Municipality of San Juan, 660 F.3d 17, 36 (1st Cir. 2011) the United States Court of Appeals for the First Circuit rejected a claim for a reasonable accommodation in the form of a reserved parking space, holding that such a claim was not cognizable because the plaintiff could not show an adverse employment action that both caused her material harm and was linked to her request for a parking spot.

make clear any wrongdoing by the EEOC (*i.e.*, the agency itself).
Apart from his disagreement with the decision by employees of the
EEOC, he fails to set forth any basis for liability of the EEOC.
Thus, Cross fails to state a plausible claim under Rule 8.  In
any event, Cross's claims (to the extent there are any) are
barred because the EEOC is entitled to sovereign immunity, and
because Cross has not set forth a basis for this Court to find
that sovereign immunity has been waived.

It is well settled that under the doctrine of sovereign
immunity, the United States (including its various branches,
departments, and agencies, such as the EEOC) enjoys immunity from
suit except in those instances in which it has expressly
consented to be sued.  See FDIC v. Meyer, 510 U.S. 471, 475
(1994); United States v. Testan, 424 U.S. 392, 399 (1976).  A
waiver of this immunity may never be implied from the factual
circumstances of a particular case.  Rather, the waiver must be
unequivocally expressed in each instance.  See United States v.
Nordic Vill., Inc., 503 U.S. 30, 33-34 (1992); United States v.
Mitchell, 445 U.S. 535, 538, (1980).

In light of the above, Cross's claims against the EEOC are
subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)
(failure to state a claim upon which relief may be granted) and
(iii)(claim barred where it seeks monetary relief against a
defendant who is immune from relief).

14

E.    Failure to State Plausible Claims Against the
       Department of Unemployment Assistance

With respect to the defendant Department of Unemployment

Assistance, Cross fails to set forth his claims clearly.  To the

extent that Cross is asserting discrimination claims against his

employer (EOL/DWD/DUA) which were the subject of the EEOC

proceedings, this Court would permit those claims to proceed upon

the filing of an amended complaint in accordance with Rule 8;

however, to the extent that Cross seeks to hold the Department of

Unemployment Assistance liable for failure to provide

unemployment benefits, Cross has not set forth any basis for

liability of the agency itself.  Apart from asserting that

Cullinane interfered with his claim for unemployment assistance,

there are no facts alleged to support a claim for liability of

the state agency.

Additionally, any other federal claims (to the extent there

are any) are barred because the Department of Unemployment

Assistance is entitled to sovereign immunity, and because Cross

has not set forth a basis for this Court to find that sovereign

immunity has been waived.[7]

_____

    [7]"The Eleventh Amendment bars actions in federal courts
claiming damages against a state and its agencies unless the
state has consented to be sued in federal court."  Boulais v.
Commonwealth of Mass., No. 00-12086, 2002 WL 225936 at *1 (D.
Mass. January 30, 2002)(citations omitted).  See Seminole Tribe
of Florida v. Florida, 517 U.S. 44, 54 (1996); Kentucky v.
Graham, 473 U.S. 159, 167 n.14 (1985)(unless a State has "waived
its Eleventh Amendment immunity or Congress has overridden it,...

Accordingly, Cross's claims against the Department of
Unemployment Assistance are subject to dismissal pursuant to 28
U.S.C. § 1915(e)(2)(B)(ii)(failure to state a claim upon which
relief may be granted) and (iii)(claim barred where it seeks
monetary relief against a defendant who is immune from relief).

F.    Order to File an Amended Complaint

In light of the above, the Court will recommend that this
action be dismissed within thirty-five (35) days from the date of
this Memorandum and Order unless Cross files an "amended
complaint" that comports with the pleading requirements of Rule 8
of the Federal Rules of Civil Procedure.  Any amended complaint
must be coherent, and should not simply reiterate the claims made
in the original complaint; it must set forth each cause of action
against each defendant separately and not jointly, along with a
brief statement of the underlying facts to support each claim
(*i.e.*, the "who, what, when, where, and why information").  The
amended complaint may reference exhibits, but any referenced
exhibit must be clearly identified and marked with a letter or
number; however, Cross may not include exhibits in lieu of

---

a State cannot be sued directly in its own name regardless of the
relief sought."); <u>Alabama v. Pugh</u>, 438 U.S. 781 (1978) (*per
curiam*) (11th Amendment generally is recognized as a bar to suits
against a State, its departments, and agencies unless the State
has consented to suit).  Nothing in Cross's allegations could be
reasonably construed as presenting claims as to which the
Commonwealth of Massachusetts has waived its sovereign immunity
to suit in federal court.

stating his claims in an amended complaint.  Rather, he must

allege, in the amended complaint, the necessary information to

give each defendant sufficient notice of the claim(s) and the

grounds for asserting liability.  Additionally, with respect to

each defendant as to whom retaliation is alleged, Cross shall

state whether he has filed a claim with the EEOC and exhausted

his remedies with the EEOC as to that defendant.  Further, Cross

must identify clearly any claims based on state law and set them

forth in accordance with Rule 8.

Finally, with respect to the EEOC and the Department of

Unemployment Assistance, Cross must set forth claims under Rule 8

and, except as to the employment discrimination claims, set forth

a basis to find that there has been a waiver of sovereign

immunity of the Commonwealth of Massachusetts.

To facilitate Cross's compliance with the directives

contained herein, the Court suggests (but does not mandate) that

Cross organize his claims by defendant's name, identify the cause

of action (*e.g.*, the ADA, the Rehabilitation Act, retaliation,

hostile work environment, etc.), and state the factual grounds in

support.[8]  Cross need not include legal argument or extraneous

---

[8]In setting forth claims for hostile work environment, Cross
must specify some factual basis for the claim, and may not
include amorphous allegations or legal conclusions.  <u>See</u>
<u>Colon-Fontanez</u>, 660 F.3d at 43 (noting that to establish a
hostile work environment claim, a plaintiff must show that the
workplace was "permeated with discriminatory intimidation,
ridicule, and insult that [was] sufficiently severe or pervasive

17

background information.

Failure to comply with these directives may result in a dismissal of this action.

G.    The Motion for Appointment of Counsel

Under 28 U.S.C. § 1915, a "court may request an attorney to represent any person unable to afford counsel."  28 U.S.C. § 1915(e)(1).  The United States Court of Appeals for the First Circuit provides the following set of factors to consider when determining whether to appoint counsel to an indigent under §

---

to alter the conditions of ... [his] employment and create an abusive working environment.") quoting Quiles-Quiles v. Henderson, 439 F.3d 1, 7 (1st Cir. 2006)(other citations omitted).  It is well settled that "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment' necessary to establish an objectively hostile or abusive work environment."  Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)(other citation omitted).  Similarly, in setting forth retaliation claims, Cross must show that he suffered material harm.  The conclusory allegation that he was not offered training to assist him in his job performance is insufficient.  See, e.g., Colon-Fontanez, 660 F.3d 17, 40-41 (finding the conclusory allegation that lack of training is not sufficient for purposes of establishing a non-trivial harm that "rises above mere inconvenience" and noting that plaintiff had the burden of showing that the alleged adverse action was "taken for the purpose of retaliating.")(citing Randlett v. Shalala, 118 F.3d 857, 862 (1st Cir. 1997)).  Cross need not succeed on an ADA discrimination claim in order to assert a claim for retaliation. Colon-Fontanez, 660 F.3d 17, 36, citing Soileau v. Guilford of Me., Inc., 105 F.3d 12, 16 (1st Cir. 1997).  Nevertheless, to establish a retaliation claim, Cross must show that: (1) he was engaged in protected conduct; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse action.  Id. citing Carmona-Rivera v. Puerto Rico, 464 F.3d 14, 19 (1st Cir. 2006); Wright v. CompUSA, Inc., 352 F.3d 472, 478 (1st Cir. 2003).

1915: "[1] the indigent's ability to conduct whatever factual investigation is necessary to support his or her claim; [2] the complexity of the factual and legal issues involved; and [3] the capability of the indigent litigant to present the case." Cookish v. Cunningham, 787 F.2d 1, 3 (1st Cir. 1986) (*per curiam*); see Bemis v. Kelley, 857 F.2d 14, 16 (1st Cir. 1988). Ultimately, to be eligible for this assistance under 28 U.S.C. § 1915, Cross "must demonstrate that he [is] indigent and that exceptional circumstances [are] present such that a denial of counsel [is] likely to result in fundamental unfairness impinging on his due process rights." DesRosiers v. Moran, 949 F.2d 15, 23 (1st Cir. 1991). This Court considers the total situation, including the merits of the case, the complexity of the legal issues, and the litigant's ability to represent herself. Id.[9]

At this juncture, the Court credits that Cross has attempted to retain counsel on his own but is unable to afford the costs of representation. The Court also considers that Cross is indigent, unskilled in the law, and may have a difficult time prosecuting

---

[9]The standard is less stringent in employment discrimination cases. See, e.g., Gadson v. Concord Hosp., 966 F.2d 32, 35 (1st Cir. 1992) (stating: "[a] district court considers three factors in determining whether to appoint counsel to a *pro se* plaintiff under Title VII: (1) the merits of plaintiff's case; (2) the efforts by plaintiff to obtain legal representation; and (3) the plaintiff's financial ability."). "Any one of the three factors may be determinative." Id. at 36 (citing Darden v. Illinois Bell Telephone Co., 797 F.2d 497, 501 (7th Cir. 1986)). Even under this standard, however, this Court does not consider appointment of *pro bono* counsel at this time to be prudent.

this action *pro se.*  Nevertheless, without a response from the defendants, this Court cannot gauge adequately the merits of his claims nor can this Court find, on this record, that Cross has demonstrated exceptional circumstances that warrant the expenditure of scarce *pro bono* resources.  Indeed, on this record, even under a liberal reading of the pleadings, the merits of Cross's claims are dubious, based primarily on generalized allegations and legal conclusions.

Accordingly, Cross's Motion for Appointment of Counsel (Docket No. 2) is <u>DENIED</u> without prejudice to renew <u>after</u> the defendants have filed a responsive pleading to any amended complaint (if this action is permitted to proceed further), upon good cause shown.

 H. <u>Consent Pending</u>

This action was randomly assigned to this Court pursuant to the District Court's Program for Random Assignment of Civil Cases to Magistrate Judges.  The Clerk shall send to Cross the standard consent package with information and instructions so that he may choose whether or not to elect to proceed before a Magistrate Judge for all purposes.  Within 35 days of the date of this Memorandum and Order, Cross shall advise the Court whether or not he consents.  Should he elect not to consent, or fail to comply with the directives contained in this Memorandum and Order, this Court will direct the reassignment of this case to a District

Judge for further proceedings.

III.  CONCLUSION

Based on the foregoing, it is hereby Ordered that:

1.  Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Docket No. 3) is <u>ALLOWED</u>;

2.  Plaintiff's Motion to Appoint Counsel (Docket No. 2) is <u>DENIED</u> without prejudice;

3.  Within 35 days of the date of this Memorandum and Order, plaintiff shall file an amended complaint (curing the pleading deficiencies) in accordance with Rule 8 of the Federal Rule of Civil Procedure;

4.  The Clerk shall provide plaintiff with the form for Consent/Refusal of Magistrate Judge Jurisdiction and the instructions for that form ("consent package"); and

5.  Within 35 days of the date of this Memorandum and Order, plaintiff shall advise the Court as to whether he wishes to consent to proceedings before a Magistrate Judge.


SO ORDERED.



                              <u>/s/ Jennifer C. Boal</u>
                              JENNIFER C. BOAL
                              UNITED STATES MAGISTRATE JUDGE


DATED: April 11, 2012